IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF TENNESSEE, AT GREENEVILLE:

**SABRINA GRAY**

    **Plaintiff**

**VERSUS**                                    **CASE NO.:** _____

                                                    **JURY DEMANDED**

**BALLAD HEALTH;**
**LOGAN BLAKLEY,**
**and JANE (JOHN) DOE,**
**alias**

    **Defendants**

## COMPLAINT

1. This case arises under **28 USC § 1332**. The case in controversy is more than Seventy-Five Thousand ($75,000.00) Dollars.

2. Plaintiff is a citizen and resident of Scott County, Virginia. Defendant, Ballad Health, is a Tennessee corporation, domesticated and doing business in Washington County, Tennessee, with situs and principal place of business situate at 400 North State of Franklin Rd., Johnson City, Tennessee 37601. Defendant, Logan Blakley, is believed to be a citizen and resident of Sullivan County, Tennessee. Defendant Jane (John) Doe, alias, is believed to be a citizen and resident of the State of Tennessee, residing in this division of this Judicial District.

3. All matters in controversy arose during plaintiff's employment at defendant, Ballad Health's, Holston Valley Medical Center facility in Kingsport, Sullivan County, Tennessee.

4. On February 24, 2014, plaintiff was employed by defendant, Ballad Health's predecessor, Wellmont Health System, as a registered nurse in the cardiovascular surgical

1

department, earning a gross wage of $26.00-27.00/hour for a 40-hour week, plus overtime. She worked at this job until April 15, 2019, when she was terminated from her position without justification or cause, and in violation of the Tennessee Whistleblower Act.

The reasons that plaintiff believes she was fired because of the Whistleblower Act will be more specifically set forth below. Suffice it to say that, on the date of her discharge, plaintiff had increased her salary to $41.78/hour for a 40-hour week, with an additional $3.00/hour for her Clinical Achievement Program (CAPS) bonus.

Thus, exclusive of overtime, plaintiff, at the time of her discharge, was earning $1,791.20/week, gross.

5. Things began to go wrong for plaintiff several months prior to her discharge, and, specifically, as defendant, Ballad Health, began to implement its policies and procedures at Holston Valley Medical Center, subsequent to the merger of Wellmont and Mountain States Health Alliance to form defendant, Ballad. One of the pure heart operating rooms (a CVOR 3) was converted to a hybrid room, where different cardiovascular procedures were undertaken, along with vascular surgical cases. Staff, including plaintiff, had become overworked and stressed, due to the demands placed upon them to work both the heart and vascular cases, including the taking of vascular calls. Other staff persons left the employ of Ballad, which placed further strain upon the staff, including plaintiff. The clinical leader, Lesia Lawrence, had taken a second position at Ballad as cardiovascular service line coordinator. Plaintiff, who did the scheduling for the unit, was told by Ms. Lawrence to not include her in the staffing of the unit, which, coupled with her numerous vacations, meetings and other absences from work, placed further strain upon plaintiff and others, as plaintiff was taking the bulk of the emergency heart team call, doing cases during the day, and attempting to rectify problems that plaintiff had attempted to bring to Ms. Lawrence's attention.

Basically, despite the wealth of problems set forth above, plaintiff was forced to deal with argumentative staff, inside and outside of the operating room. The problems recited in this numbered paragraph, and its subparagraphs—a not all-inclusive list of such problems—will become relevant as the pretextual reasons for defendant, Ballad's, discharge of plaintiff are discussed herein.

6. On January 24, 2019, plaintiff received her pay stub (her pay was directly deposited into her checking account) from Ballad Health by way of electronic means. Her pay was to include a two (2%) percent increase in gross pay on her hourly pay rate. The retention of this increase, called a Performance Evaluation Increase, had customarily been shown by way of an hourly increase in pay, and had been guaranteed in the COPA creating defendant, Ballad. However, this increase had, instead, been displayed as a lump sum.

What was troubling, however, to plaintiff was that specific pay grades were actually frozen to supposedly assist in equalizing pay across the board, but which, rather, were designed, as only Ballad Health can do, to push the expensive marble (such as plaintiff) out of one end of the tube, and push the younger, cheaper model into the other end, clearly violating the terms and provisions of the COPA.

7. Much chagrined by this action, plaintiff, in early-February, 2019, spoke at a public forum attended by hundreds at Northeast State Community College in Blountville, Tennessee. Plaintiff's speech was featured on the local television stations in the Tri-Cities, and also received extensive coverage in all the newspapers from the Tri-Cities to Roanoke: in fact, plaintiff was featured on the front page of the Kingsport Times-News. In so doing, plaintiff, figuratively, signed her own death warrant.

8. After speaking publicly, Lesia Lawrence approached plaintiff and told her not to push the issue, that plaintiff was "making enough money already," and that she feared plaintiff would be fired if she continued to speak out. Plaintiff continued to speak: she met with Ballad's Human Resources manager, Rhonda Reeves, who told plaintiff that they were trying to equalize pay and, supposedly, stopping people from going any higher in pay grade until pay were equalized. Ms. Reeves also acknowledged dissension in plaintiff's department and promised to look into the situation. She promised that she, plaintiff, and Ballad's Vice-President for Human Resources, Hamlin Wilson, would meet to discuss the situation, which said meeting occurred on March 19, 2019.

9. On March 19, 2019, Wilson, Reeves, and plaintiff met at Holston Valley Medical Center. Plaintiff again discussed the problems with her pay, the fact that it had been capped in derogation of the COPA, the fact that the pay capping occurred in August, 2018, prior to the period of plaintiff's evaluation, and the fact that neither the clinical leaders nor the H.R. managers knew anything about the cap in pay, although Lesia Lawrence did receive an email subsequent to the cap but prior to this meeting, which she allowed plaintiff to read. Rowen Lyons, Indian Path Medical Center Human Resources Manager, requested Lesia Lawrence forward her the email as she had done.

After speaking with Wilson about this, and the chronic understaffing of her department, Wilson promised to remedy the situation. Plaintiff, upon exiting the meeting, gave Wilson, who, at all material times, was Ballad's agent, servant and employee, a letter, stating that if there were no resolution to her problem, then she would seek general legal help, and help from various state agencies.

10. As plaintiff has stated, she was overworked and also, though not stated, she was in pain with a fractured leg. Referring to Paragraph 5 of this Complaint, on March 13, 2019, plaintiff had just exited the operating room where she had set up her case load for the day. Scott Pruitt, a scrub tech, stated, "We have an emergency, a vascular emergency, by Dr. Allen. I am unaware of the type of emergency it is."

Plaintiff knew that she did not have enough staff to work the cases for that morning as well as that emergency. Therefore, at 5:23 a.m. that day, plaintiff called defendant, Logan Blakley three (3) times, because she was supposed to work that day, with the understanding that she would return prn, as well as a scrub tech, Savannah Shields, who was also off that day, but who was on call prn. In attempting to call both, the phone went straight to voicemail each time. She then attempted to call the hospital operator and, in so doing, uttered oaths which are not stated in polite company, out of extreme frustration, stressing because she never had enough staff, which, on two occasions, caused a loss of life. This was accidently recorded on Blakley's voicemail, as the call had not been disconnected as the Plaintiff set her cell phone aside to call the hospital operator.

Plaintiff self-reported her outburst to Lesia Lawrence, her clinical leader, who laughed about it, saying, and "Don't you know better than to have something recorded?" Also, the same day, plaintiff went to defendant, Blakley, to inform her about the voicemail. Blakley said she did not see a voicemail on her phone. It was decided upon this day, by Lesia Lawrence, that no employee would be given off on a scheduled work day since the department was now responsible for providing emergency coverage for vascular cases.

In a subsequent conversation, Blakely informed others that she did not take the tape recording to human resources, but, rather, someone else had, as Blakley had been sharing it

with people for her amusement. This unknown person shall be, hereinafter, referred to as Jane (John) Doe, or, simply, "Doe."

11. Not coincidentally, the day after plaintiff met with Reeves and Hamlin, specifically, on March 20, 2019 (and one week after her outburst of frustration), Lesia Lawrence brought plaintiff into her office and gave her a verbal warning regarding language. This was followed by a written memorandum of that verbal warning, date-stamped March 22, 2019. Lawrence also stated that, contrary to what defendant, Blakley, had said, the voicemail was, indeed on her phone, and that Lawrence had a copy of same.

12. On April 15, 2019, after nearly five (5) consecutive years of good service to defendant, Ballad, as reflected by higher than average performance evaluations, clinical records, and interaction with other staff, and the like, plaintiff was terminated from her position with defendant, Ballad Health. At the termination meeting, plaintiff was informed that not only was there the offending recording previously set forth, but that Ballad Health, unknown to plaintiff, was also in possession of a second, earlier recording, of a personal nature, made while plaintiff was working, between plaintiff and her ex-boyfriend via plaintiff's cell phone, which had been supplied to them, by Jane (John) Doe. Plaintiff has repeatedly demanded to hear this recording; each time, she has been rebuffed, stating that her recording on her cell phone was Ballad's property. Hamlin informed plaintiff during the termination meeting that if she appealed the termination, then the name of the employee and contents of the recording could be revealed. Plaintiff was denied this information during the appeal process, again with Reeves and Dr. Clay Runnels, April 30, 2019 stating it was Ballad property and no information could be shared.

13. Plaintiff incorporates Paragraphs 1 through 12, inclusive, of the premises to this Complaint, and avers that she was terminated for violating the terms and provisions of the

6

Tennessee Whistleblower Act, codified at **TCA § 50-1-304** in that plaintiff was discharged from her position solely for refusing to remain silent about illegal activities committed by the defendant, Ballad, including, but not limited to, violations of the COPA Act and the COPA itself.

The ridiculous assertion that she was discharged because she uttered oaths while under pressure and under staffed, not coincidentally within 5 weeks after she spoke out publicly against her employer (her discharge being less than 10 weeks from that point) is just that. Fellow employees were allowed to curse more freely on the floor than any of the characters in Chaucer's Canterbury Tales, as were the physicians themselves. She avers that she should have judgment against all defendants, jointly and severally, for damages as a direct and proximate result of this tort, to be set forth herein below.

14. Plaintiff incorporates Paragraphs 1 through 12, inclusive, of the premises to this Complaint. She avers that the defendants, Ballad and Jane (John) Doe, individually, collectively, and as agents, servants and employees of their co-defendant, Ballad Health, have violated the terms and provisions of **TCA §§39-13-601 through 603, inclusive.** She avers that all defendants, jointly and severally, conspired and confederated, as agents, servants, and employees, to violate the terms of said act. She, further, avers that, as a direct and proximate cause of said violations of said statute, she has sustained damages.

The voicemail, in fact, became a source of amusement for defendant, Blakley, and others, as it would be played and shared over and over again.

15. Plaintiff incorporates Paragraphs 1 through 14 of the premises to this Complaint. She avers that, as a direct and proximate result of the negligence and wrongful conduct of the defendants, jointly and severally, acting in concert to facilitate defendant, Ballad's, wrongful termination of her, she is entitled to damages against each, jointly and

7

severally, for past, present, and future lost wages, a loss of benefits in her 401 (k) plan in the sum of $5,000.00 per year, an increased cost in her health insurance, and increased housing and transportation costs, as she has had to take a position as a travel nurse with Atlas Med Staff in Omaha, Nebraska. She also avers that she has sustained great humiliation and embarrassment, and should be compensated for this, and, finally, that she has incurred, or will obligate herself to incur, reasonable attorney's fees, and should be compensated for same. This list of remedies is non-inclusive, and plaintiff prays for all allowable remedies pursuant to **TCA § 4-21-306**, as incorporated into **TCA § 50-1-304.**

16. Plaintiff incorporates Paragraphs 1 through 14 of the premises to this Complaint. Supplementary, and not alternatively, plaintiff avers that she is entitled to damages under the auspices of **TCA §§39-13-601, through -603, inclusive**, for the illegal and wrongful interception of the "first" telephone call by all defendants, jointly and severally, acting in conspiracy with each other, and the "second" telephone call by all defendants, jointly and severally, acting in conspiracy with each other including (a) statutory damages in the sum of Ten Thousand ($10,000.00) Dollars per each call, (b) punitive damages per each call, and (c) reasonable attorney's fees per each call.

17. Plaintiffs aver that the actions set forth above and the personal injuries resulting to her therefrom were directly and proximately caused by the negligence, wrongful conduct and intentional conduct of the defendants, jointly and severally, acting in concert with each other.

WHEREFORE plaintiff demands judgment against the defendants, jointly and severally, in the sum of One Million ($1,000,000.00) Dollars (and any other equitable remedy

8

provided by statute), in compensatory damages, and Two Million ($2,000,000.00) Dollars in punitive damages.

Plaintiff demands a jury to try this case.

SABRINA GRAY

By: _____
Francis X. Santore, Jr., BPR #011315
Of Counsel

SANTORE AND SANTORE
Attorneys at Law
P. O. Box 113
Greeneville, TN 37744-0113
423-639-3511

Attorneys for Plaintiff

9

Case 2:20-cv-00023-KAC-CRW   Document 1   Filed 02/11/20   Page 9 of 9   PageID #: 9